ODELL, Plaintiff in error, v. STATE, Defendant in error.†

Supreme Court

*No. 76–707–CR. Submitted on briefs January 9, 1979.—*
*Decided January 30, 1979.*
(Also reported in 274 N.W.2d 670.)

† Motion for reconsideration pending. This motion was not decided at the time the volume went to press. Its disposition will be reported in a later volume.

For the plaintiff in error the cause was submitted on the brief of *Howard B. Eisenberg,* state public defender, and *Alvin E. Whitaker,* assistant state public defender.

For the defendant in error the cause was submitted on the brief of *Bronson C. La Follette,* attorney general, and *Marguerite M. Moeller,* assistant attorney general.

WILLIAM G. CALLOW, J.  Plaintiff in error was convicted, following a jury trial and a verdict of guilty, of theft of property exceeding $100 in value, contrary to secs. 943.20(1)(a) and 943.20(3)(b), Stats.  The issues raised on appeal are whether the evidence was sufficient to support the conviction and whether the trial court erred in denying plaintiff in error's motion for a new trial because the prosecutor cross-examined plaintiff in error concerning his refusal to answer a question during a custodial interrogation.  Concluding that the evidence was sufficient to support the conviction and the trial court did not err in denying the motion for a new trial, we affirm.

The state produced evidence to show that plaintiff in error was present in the Badger Bus Depot in Madison, shortly before 10 a.m. on September 7, 1973.  Plaintiff

in error asked the station manager whether a pair of colored glasses and a pair of moccasins in a paper bag had been found in the depot. The manager and plaintiff in error went to the manager's office to search the lost and found. The door to the manager's office was kept locked. The manager inserted his key, opened the door, and went through items in the lost and found while plaintiff in error remained in the doorway.

On a desk in the office was a red money bag containing approximately $1,000, the prior day's receipts for the depot ticket office, concession stand and magazine sales. While the manager was searching through the lost and found he heard a click, although it meant nothing to him at the time. This noise may have been plaintiff in error disengaging the lock on the door. Being unable to find the articles which plaintiff in error asked for in the lost and found, the manager returned to duty at the ticket counter, closing the door behind him. Plaintiff in error accompanied the manager back into the main waiting room area.

A short time later, one of the Badger bus drivers, who was placing a telephone call, noticed plaintiff in error enter the office. He had seen plaintiff in error go to the office in the company of the manager, and therefore thought nothing more of plaintiff's re-entry into the office, assuming that the manager was there. Shortly afterward, a depot employee working at the ticket counter heard a distinctive click which she associated with the closing of the office door, glanced into the corridor, and observed plaintiff in error proceeding back into the waiting area.

Within ten minutes after the ten o'clock Badger bus for Milwaukee departed, the manager discovered that the red money bag containing the cash receipts for the previous day was missing from the desk in the office. The Madison police were notified, and were given plaintiff in error's description. He was apprehended

later the same day, with $456 in small bills on his person. One of the bills was a series 1934 $10 bill. The manager testified that a bill of the same series had been in the money bag which was stolen from the desk in the depot office. He also testified that this was a relatively rare bill, and that he might come across four in the course of a year.

After being arrested, plaintiff in error was interrogated by a Madison police detective, who testified that he informed plaintiff in error of his *Miranda* rights, and that plaintiff in error stated he was willing to talk to the detective. According to the detective, plaintiff in error denied entering the depot office a second time, and denied taking any money. When the detective inquired where plaintiff in error had obtained the money which was found on his person at the time of arrest, plaintiff in error refused to answer. This testimony was not objected to.

Also testifying for the state was the manager of a Howard Johnson Restaurant located in Madison. He testified that plaintiff in error came to see him on September 7 at eleven o'clock in order to discuss a business venture. He told plaintiff in error a $1,000 investment would be required. Plaintiff in error counted out something over $900 in small denomination bills, and gave the witness about one-half the money, requesting that the witness hold· it until plaintiff in error made up his mind whether to participate in the venture. Plaintiff in error also asked the witness to change the money into larger bills. The manager did change the deposit into larger bills when he visited the bank that day. Plaintiff in error did not return to claim his deposit, and so the manager placed the money in the Howard Johnson safe for safekeeping. Upon learning of the theft on September 8, he turned the larger bills which he had changed for plaintiff in error over to the Madison police. They amounted to $484.

In his defense, plaintiff in error offered the testimony of two women to the effect that he had large amounts of money in small bills on his person on the evening of September 6, and at 8:30 on the morning of September 7. He also offered the testimony of John Tillman, a Chicago businessman, that he had given plaintiff in error $3,500 in small bills on September 3. This money was to be used for location of a site for a rock music festival. Dan Estreen, a real estate broker and attorney from Wausau, testified that he had a telephone conversation with the Howard Johnson manager and plaintiff in error on September 7, relative to the business venture between those two. He placed the time of that conversation between 9 a.m. and 10 a.m. If he was correct, the Howard Johnson manager was mistaken in testifying that plaintiff in error visited him at 11 a.m.

Plaintiff in error took the stand and admitted visiting the Badger Bus Depot and inquiring after articles left in the depot. He denied entering the depot office when the manager was not present, claiming that he went to the washroom. He denied taking the money in the red money bag. The bag was never recovered. On cross-examination he was asked why he did not explain to the interrogating detective that the money on his person had been given to him by John Tillman. He answered that it was none of the detective's business, and that he decided not to answer because he was in custody and had been accused of the theft.

The evidence in this case is clearly sufficient to convict. The questions involved were ones of credibility. After having been out for some time, the jury returned asking to have the testimony of the bus driver and the Howard Johnson manager repeated to it. At that time, the jury was deadlocked. Subsequently, it reached a verdict of guilty.

Having disposed of the sufficiency of the evidence question, we turn now to the argument that reversible error was committed by permitting the prosecutor to ask plaintiff in error why he refused to tell the detective the source of the money which was on his person at the time of arrest.

Conceding that error was committed in this case, and that the error is one of constitutional proportions, the state argues on appeal that the error was harmless beyond a reasonable doubt. In the course of this argument, the state points out that the detective's testimony during the state's case in chief was not objected to, and is not assigned as error on this appeal. The state claims that receipt of this testimony was also error, requiring no objection to preserve it because of the constitutional ground. From this, the state reasons that an error similar to the error assigned was not perceived by either trial or appellate counsel as prejudicial.

From our review of the record we cannot say that the error assigned on appeal, the cross-examination of plaintiff in error as to the reason for his refusal to tell the detective the source of the money, was harmless beyond a reasonable doubt. However, we hold that no error was committed in permitting the cross-examination, rejecting the state's concession that it was. The testimony of the detective during the state's case in chief stands on different ground. This evidence should not have been received, but the ground for objection was not constitutional. Failure to make the objection waived it. The evidence was merely cumulative in any event, inasmuch as plaintiff took the stand and was cross-examined on the same point. It is clear that the detective's testimony did not influence the decision by plaintiff in error to testify.

It is an error of constitutional dimensions to allow the fact that an accused invoked his constitutional right

not to answer to be used as an admission of guilt. Such evidence would be admissible under prior Wisconsin case law, but is foreclosed by *Miranda v. Arizona,* 384 U.S. 436 (1966). *Reichhoff v. State,* 76 Wis.2d 375, 251 N.W.2d 470 (1977). The evidence given by the detective during the state's case in chief would not have been admissible under prior Wisconsin case law, because it was not a failure to respond to an accusation. This was the only evidence which could be introduced as an admission. *Galloway v. State,* 32 Wis.2d 414, 145 N.W.2d 761, 147 N.W.2d 542 (1966). The detective testified that plaintiff in error denied having committed the crime. His testimony as to plaintiff in error's refusal to tell where the money came from was evidently an attempt to impeach the out of court denial. This testimony could not be received as an admission, and if an objection had been made, it should have been sustained. No objection having been made, and any prejudicial effect of the testimony having been absorbed into the cross-examination of plaintiff in error on the same point, this is not an appropriate case in which to invoke the plain error rule of sec. 901.03 (4), Stats.

With respect to the cross-examination of plaintiff in error, the question as to his failure to tell the detective where he got the money is claimed to be improper under the decision of the United States Supreme Court in *Doyle v. Ohio,* 426 U.S. 610 (1976). *Doyle v. Ohio* prohibited use of the fact that the accused refused to answer any questions for purposes of impeachment when the accused presented a factual defense at trial. The theory of impeachment was that a guiltless accused would have offered the same factual explanation to the arresting officer, and his failure to do so permitted an inference that the story presented for the first time at trial was not true. The United States Supreme Court held that

this use of the silence of the accused for purposes of impeachment violated due process, because the accused had been implicitly promised that if he invoked his constitutional rights that fact would not be used against him. The implicit promise arose out of the *Miranda* warning which was given to the accused that if he gave up the right to remain silent any statement which he made could be used against him. The court ruled that the accused could reasonably understand this to mean that if he did not give up the right to remain silent his statement in refusing to do so could not be used against him for any purpose, whether as an admission or as impeachment.

As the dissent in *Doyle* points out, prior silence by invoking the constitutional right not to incriminate oneself, offered for the purpose of impeachment, is not rendered inadmissible under the fifth amendment. *Raffel v. United States,* 271 U.S. 494 (1926). *Doyle* does not overrule *Raffel,* because *Doyle* is decided on fourteenth amendment due process grounds rather than fifth amendment grounds. *Raffel* is no longer applicable in federal courts because of the ruling of the United States Supreme Court under its supervisory powers in *United States v. Hale,* 422 U.S. 171 (1975). *Hale* is decided, however, not on constitutional grounds, but on the ground that the fact of silence has little probative value. Perhaps in that case; not so in this one.

In *Doyle v. Ohio* the accused invoked his right to remain silent and refused to answer any questions. In this case, plaintiff in error gave up his right to remain silent and answered a number of questions. It is true that he could, consistent with the *Miranda* warning, refuse to answer any question asked. However, there was no promise made to him, express or implied, as there was in *Doyle,* that his statements would not be used

against him. In fact, he was informed that if he gave up the right to remain silent his statements would be used against him. His refusal to answer the detective's question is a prior inconsistent statement and is admissible for purposes of impeachment under sec. 908.01 (4) (a), Stats.

*By the Court.*—Judgment and orders affirmed.