ODELL, Plaintiff in error, v. STATE, Defendant in error.

Supreme Court

*No. 76–707–CR. Decided June 12, 1979.*

(Also reported in 279 N.W.2d 706.)

PER CURIAM (*on motion for reconsideration.*) Plaintiff in error (hereinafter defendant) has moved for reconsideration of the opinion previously filed in this case, arguing (1) that the opinion incorrectly characterizes the admission of testimony in the State's case in chief regarding the defendant's refusal to answer a question during custodial interrogation as nonconstitutional error and (2) that the opinion misstates the law regarding the permissible use of a defendant's silence during custodial interrogation to impeach the defendant during cross-examination. The State agrees with the defendant's contentions but continues to assert that the errors of the trial court were not prejudicial.

Upon review of the record and the cases cited in the memorandum submitted in support of the motion for reconsideration, we conclude that the opinion previously filed may confuse and mislead as to the permissible evidentiary use of a defendant's silence during custodial interrogation. Accordingly we withdraw the language of the opinion discussing the admission of the testimony of the detective and the cross-examination of the defend-

ant as to the defendant's silence during custodial interrogation and substitute the following language:

We first consider whether constitutional error was
committed upon the admission of the testimony of the
detective in the State's case in chief that the defendant
would not tell the detective where he got the money
found on his person when he was arrested. The detective
testified as to the defendant's response during the custodial interrogation as follows:

"A. . . . I asked Mr. Odell [the defendant] if he understood those constitutional rights. He stated that he
did and further stated that he was willing to talk to me
concerning the case at Badger Bus Depot. I asked him
several pertinent questions concerning his whereabouts
in the morning. He readily agreed that he had been at
the Badger Bus Depot, that he had gone there to retrieve
some shoes and some sunglasses that he left there three
or four weeks prior. He contacted the manager and the
manager had taken him into the office area, and the manager rummaged around and did not locate the shoes.
Mr. Odell stated that he could see that those shoes were
not there and shortly thereafter he left the office. Mr.
Odell stated he went to the phones and he used one of the
phones for a short period of time, and he left shortly
thereafter.

"Q. Did you ask Mr. Odell if he entered the office a
second time?

"A. Yes, I did.

"Q. And what was his reply?

"A. He stated he did not go in the second time.

"Q. Did you ask him if he'd taken any money?

"A. Yes, I did.

"Q. And he replied?

"A. He did not take any money.

"Q. Did Officer Solverson give you anything?

"A. Yes, Officer Solverson had retrieved from Mr.
Odell a considerable sum of money which he turned over
to me.

"Q. I show you what has been marked as Exhibit
Number Ten, a plastic bag of money with some writing on
the top. Can you identify this writing?

"A. This is not my writing here, but my writing is on this property tag. I probably had one of the other officers make out the bag itself, but the property tag and the property record is mine.

"Q. I take it you did something to that money on that day?

"A. Yes, I observed, I supervised it being placed in there.

"Q. And you properly tagged the money?

"A. Yes, that is correct.

"Q. Did Mr. Odell tell you where he got the money?

"A. He would not answer that question concerning where he had retrieved any of the money.

"MR. MATHEWS: I have no further questions.

"THE COURT: Cross examine."

On reconsideration, we conclude we erred in holding in our original opinion that the admission of the detective's testimony that the defendant "would not answer that question concerning where he had retrieved any of the money" raised only a question of evidence, which was waived by failure to object. The detective's testimony is constitutional error, because the question and answer were designed to demonstrate a tacit admission of guilt on the part of the defendant. The purpose of the evidence was to allow the jury to draw an inference of defendant's guilt from his refusal to explain the presence of the money. Such an inference of guilt is a direct violation of the defendant's right to remain silent guaranteed by sec. 8, Art. I, Wis. Const., and the fourteenth amendment of the United States Constitution. *Miranda v. Arizona,* 384 U.S. 436, 438 (1966); *Rudolph v. State,* 78 Wis.2d 435, 441, 442, 254 N.W.2d 471 (1977); *Reichhoff v. State,* 76 Wis.2d 375, 378, 379, 251 N.W.2d 470 (1977); *State v. Johnson,* 60 Wis.2d 334, 342, 210 N.W.2d 735 (1973).

The testimony of the detective in the case at bar concerning the defendant's refusal to explain the money in

his possession is substantially similar to the testimony presented in the *Reichhoff* case (in which the defendant did testify) and in the *Rudolph* case (in which the defendant did not testify). In both *Reichhoff* and *Rudolph* the admission of the testimony of the police officers was found to be constitutional error and our observations in *Rudolph v. State, supra,* 78 Wis.2d at 441, 442, are equally applicable here:

"Under the circumstances of the instant case, we have no doubt that it was error to present testimony of the defendant's election to remain silent at the time of his postarrest custodial interrogation. This error is not based on the due process considerations of *Doyle,* but rather on the guarantee against self-incrimination contained in the Fifth Amendment, as incorporated in the Fourteenth, which proscribes the prosecution's use of the defendant's silence in its case in chief. . . ."

We conclude that it was constitutional error in the case at bar to permit the prosecution to question the detective about the defendant's failure to respond to questions about the money during custodial interrogation.

We next consider whether constitutional error was committed in allowing the defendant to be cross examined regarding his failure to respond during custodial interrogation to questions concerning the money found on his person. The cross examination of the defendant proceeded as follows:

"Q. Why didn't you tell [the detective] where you got the money when he asked you that question?

"A. Well, I didn't feel it was any of the detective's business what my source of income is or where I get money from.

"Q. You do not think it's important when you are arrested with $450.00 in relatively small denominations on your person, twenties, tens, fives and ones, and the police say the receipts from the Bus Depot were taken, and that that was in small denominations, where did you get that money, Mr. Odell? You don't think that's important?

"MR. PELLINO: I will object, Your Honor, as argumentative. He's already answered it.

"MR. MATHEWS: Not everyone in the Bus Depot had $400.00 on him. It's important cross.

"THE COURT: You can answer the question. Can you answer the question? Would you read it back? (COURT REPORTER READS BACK LAST QUESTION)

"A. I'm accustomed to having a large sum of money from time to time on my person.

"Q. That's not the question I'm asking you. Do you not think it's important when you are taken to the Police Station and arrested for a theft to explain where you have that money on your person?

"A. No, I didn't think it was important, and he had accused me or I was suspected of something."

The series of questions asked the defendant on cross-examination was an attempt by the prosecutor to impeach defendant's exculpatory story explaining the money he was carrying at the time of his arrest. In *Doyle v. Ohio,* 426 U.S. 610 (1976), the United States Supreme Court held that allowing the prosecution to use the arrested person's silence to impeach an explanation subsequently offered at trial would be fundamentally unfair and a violation of the due process clause of the fourteenth amendment.

This court's original opinion in the case at bar attempts to distinguish this case from *Doyle* by noting that this defendant began to answer the questions posed by the police after having received the *Miranda* warnings, while Doyle never answered any questions.

We were in error in believing that Doyle did not answer any questions during his custodial interrogation. A careful reading of Justice Stevens' dissenting opinion reveals that Doyle was not silent during interrogation. Justice Stevens commented ". . . [I]t is not accurate to say that the petitioners [Doyle and Wood] 'stood moot or claimed the privilege in the face of accusations'. Neither petitioner claimed the privilege and petitioner

Doyle did not even remain silent." *Doyle v. Ohio,* 426 U.S. at 627, 628.

Upon rereading the record we conclude that the defendant's silence during the custodial interrogation is consistent with his exercise of his constitutional rights. After answering some questions the defendant chose to assert his right to remain silent. Decisions of this court, as well as those of the United States Supreme Court, clearly establish that a defendant has a right to answer some questions after the *Miranda* warning and then to reassert the privilege and break off all questioning. *Micale v. State,* 76 Wis.2d 370, 376, 251 N.W.2d 458 (1977) ; *Michigan v. Mosley,* 423 U.S. 96, 100 (1975) ; *Miranda v. Arizona,* 384 U.S. 436, 473 (1975).

We conclude that it was constitutional error in the case at bar to permit the prosecution to cross-examine the defendant about his failure to respond to questions during custodial interrogation.

We next consider whether the constitutional errors were harmless.

Defense counsel failed to object to the improper questioning at trial. Such failure, however, does not waive the right to raise the issue on appeal. In *Holloway v. State,* 32 Wis.2d 559, 568, 146 N.W.2d 441 (1966), this court held an objection at the trial is unnecessary to preserve the right to raise constitutional errors on appeal. Nevertheless counsel's failure to raise the errors is indicative of counsel's view of the seriousness of the error.

In *Rudolph v. State,* 78 Wis.2d 435, 447, 254 N.W.2d 471 (1977), defense counsel had objected to the testimony at trial; he failed to renew this claim of error on post-verdict motions. This court discussed the counsel's

failure to raise the error in post-verdict motions as follows:

"The fact that the defendant's trial counsel did not request any additional instructions or specifically base his motion for a new trial on the error now asserted is an indication that at the time of trial this error was viewed as being far less egregious than now. While we recognize the issue involved here is one of constitutional dimensions so that the usual waiver rules are not applicable, see *State v. Johnson, supra,* at p. 343, we merely point out these deficiencies in the record as being indicative of the fact that trial counsel was apparently satisfied with the trial court's action."

This court determined in its prior opinion that the cross-examination of the defendant was prejudicial error in light of the record. 87 Wis.2d 294, 299. Defendant submits in his motion for reconsideration that the direct examination of the detective was also prejudicial since it covered the same ground as the cross-examination of the defendant.

We are not inclined to retreat from our original holding that the error in this case was prejudicial. At the trial, the prosecutor asked the defendant why he did not tell the detective where he had obtained the money. The defendant responded that it was none of the officer's business. The prosecutor then put a follow-up question as to why the defendant did not think it important to tell the officer about the source of the money. At that point, the record reads as follows:

"MR. PELLINO [defense counsel]: I will object, Your Honor, as argumentative. He's already answered it.

"MR. MATHEWS [prosecutor]: Not everyone in the Bus Depot had $400.00 on him. *It's important cross.*

"THE COURT: You can answer the question. *Can you answer the question?* Would you read it back?" (Emphasis added.)

The objection, the answer and the ruling came in the presence of the jury. The jury was informed that the

question was important and was informed that the trial court wondered whether the defendant could give a satisfactory explanation.

As we noted in our original opinion the questions involved in the case were ones of credibility. The jury apparently did not find this an easy case. The jury was taken out at 4:25 p.m. The jury returned to court from about 9:00 p.m. to 9:15 p.m. to view the money. The jury returned to the courtroom a second time at about 10:00 p.m. and then a third time at about 11:00 p.m. to have parts of the record read to them.

Under the circumstances, we cannot conclude beyond a reasonable doubt that the prosecutor's actions in bringing defendant's silence during custodial interrogation to the jury's attention was harmless. *Chapman v. California,* 386 U.S. 18, 24 (1967).

One of the errors assigned on appeal is the failure of the trial court to grant defendant's motion for a new trial. In view of our ruling on the motion for reconsideration, we hold that it was error to deny a new trial. Accordingly, our prior mandate is vacated, the judgment and orders appealed from are reversed, and the cause is remanded for a new trial.