**Mary GORMLEY, Appellant,**

v.

**DIRECTOR, CONNECTICUT STATE DEPARTMENT OF PROBATION and Attorney General of the State of Connecticut, Appellees.**

**No. 913, Docket 79–2241.**

United States Court of Appeals, Second Circuit.

Argued March 18, 1980.

Decided May 27, 1980.

Certiorari Denied Dec. 1, 1980. See 101 S.Ct. 591.

---

Joseph Rubin, Hartford, Conn., for appellant.

Robert E. Beach, Jr., Asst. State's Atty., Wallingford, Conn., for appellees.

Before WATERMAN, MANSFIELD and TIMBERS, Circuit Judges.

TIMBERS, Circuit Judge:

One of the symptoms of a sick segment of our society is the increasing frequency with which the telephone is used to harass and annoy others. Many states, as well as the federal government, have enacted statutes which make that conduct a criminal offense.

■ Such a statute—the Connecticut telephone harassment statute[1]—is before us on the instant appeal from a judgment entered in the District of Connecticut denying appellant Mary Gormley's petition for a writ of habeas corpus. The questions presented are whether that statute, under which appellant was convicted in the Connecticut state courts, is unconstitutionally overbroad on its face and as applied. We agree with the district court and the state courts that it is not. We affirm the judgment of the district court.

## I

The events which led to appellant's conviction in the state courts occurred on the evening of September 1, 1974. They involve two separate but related incidents.

The first incident occurred about 6:30 P.M. The complainant[2] and a friend drove into the parking lot of Hardee's Restaurant in Newington, Connecticut, where complainant worked. Appellant, who had been following complainant, drove her car into the same parking lot and pulled up abreast of complainant's car. As complainant emerged from her car, appellant shouted from her car window that complainant was a "tramp", that complainant's mother was a whore and had gone to bed with appellant's

husband, and that appellant was "going to get" complainant this time. While appellant was shouting these insulting remarks, complainant and her friend walked toward the restaurant and entered. This incident was the basis for the disorderly conduct charge for which appellant was prosecuted under Conn.Gen.Stat. § 53a–182(a)(2) (Rev. 1958, Supp.1979).

The second incident occurred between 9:00 and 10:00 P.M. the same evening. Appellant telephoned Hardee's Restaurant where complainant was working. The manager who received the call passed the receiver to another employee who in turn passed the receiver to complainant. When complainant got to the phone she heard appellant repeat substantially the same insulting remarks she had made earlier in the evening in the parking lot. Appellant added, however, that she had photographs to prove that complainant's mother had been in bed with appellant's husband, that complainant's family were a bunch of nuts and were all under psychiatric care. This telephone call was the basis for the harassment charge for which appellant was prosecuted under Conn.Gen.Stat. § 53a–183(a)(3) (Rev. 1958, Supp.1979).

Appellant was charged in a two count information and was convicted on March 18, 1976 on the disorderly conduct and harassment counts after a jury trial in the Court of Common Pleas at New Britain. She was sentenced on April 15, 1976 on each count to consecutive three month terms of imprisonment. Execution of the sentences of imprisonment was suspended and she was ordered to serve consecutive one year terms

---

1. The Connecticut telephone harassment statute, Conn.Gen.Stat. § 53a–183(a)(3) (Rev.1958, Supp.1979), in relevant part provides:
  "A person is guilty of harassment when . . . (3) with intent to harass, annoy or alarm another person, he makes a telephone call, whether or not a conversation ensues, in a manner likely to cause annoyance or alarm."

2. Every good case of course should have an element of mystery. *Mallis v. FDIC*, 568 F.2d 824, 827 n.4 (2 Cir. 1977), *cert. dismissed sub nom. Bankers Trust Co. v. Mallis*, 435 U.S. 381 (1978); *Westchester Fire Insurance Company*

*v. Tantalo*, 273 F.Supp. 7, 12 n.5 (D.Conn.1967). The mystery here is why the complaining witness is referred to as "complainant" and not otherwise identified in the state court opinions, whereas appellant Gormley is referred to in the caption of the opinion by the Appellate Session of the Superior Court as "Anonymous" (*State v. Anonymous*, 34 Conn.Supp. 689, 389 A.2d 1270 (Super.Ct.1977) (Shea, J.), *appeal denied*, 174 Conn. 803, 382 A.2d 1332 (1978)). Since the state courts have referred to the complaining witness throughout as "complainant", we shall do likewise.

of probation under the supervision of the Department of Adult Probation.

Appellant appealed to the Appellate Session of the Superior Court. On September 9, 1977 her conviction on the disorderly conduct count was set aside and a new trial was ordered; but her conviction on the harassment count was affirmed. *State v.Anonymous, supra* note 2. On March 7, 1978 the Connecticut Supreme Court denied appellant's petition for certification.[3] *Id.*

Appellant thereupon filed a petition for a writ of habeas corpus in the District Court for the District of Connecticut. In a well reasoned opinion dated October 19, 1979, Judge Blumenfeld denied appellant's habeas petition; in so doing, he accepted Magistrate Eagan's findings of fact as modified and accepted the magistrate's recommendation that the petition be denied.

From the judgment entered on Judge Blumenfeld's opinion, this appeal has been taken.

## II

In the light of these facts and prior proceedings, we turn directly to the chief issue on this appeal, namely, whether the Connecticut telephone harassment statute under which appellant was convicted is unconstitutionally overbroad on its face. We hold that it is not.

Congress has enacted the federal telephone harassment statute,[4] 47 U.S.C. § 223 (1976), the relevant provisions of which closely parallel the Connecticut statute here involved. The Third Circuit in *United States v. Lampley*, 573 F.2d 783 (3 Cir. 1978), rejected First Amendment attacks upon the constitutionality of the federal telephone harassment statute on its face. The *Lampley* court emphasized that

> "[I]n enacting § 223 the Congress had a compelling interest in the protection of innocent individuals from fear, abuse or annoyance at the hands of persons who employed the telephone, not to communicate, but for other unjustifiable motives." *Id.* at 787 (citations omitted).

The parallel between the "compelling interest" which Congress sought to protect in enacting the federal statute and the equally compelling interest which the Connecticut legislature sought to protect in enacting the statute here in question was succinctly stated by Judge Blumenfeld in his opinion below:

> "Connecticut's interest is equally compelling and is unrelated to the suppression of free expression, as evidenced by the statute's neutral approach to ensuing conversation or its absence. And like the federal law, Connecticut's specific intent requirement 'precludes the proscription of mere communication.'" *Id.* at 787.

Clearly the Connecticut statute regulates *conduct,* not mere speech. What is proscribed is the making of a telephone call, with the requisite intent and in the speci-

---

**3.** On May 17, 1978 the Court of Common Pleas ordered that appellant commence serving her sentence of probation. Magistrate Eagan on June 16, 1978 entered a stay of this order which he later lifted on February 7, 1979. For aught that appears in the record before us, appellant has not yet commenced serving her sentence of probation. It is for this reason that we order that our mandate issue forthwith.

**4.** The federal telephone harassment statute, 47 U.S.C. § 223(1) (1976), in relevant part provides:

"Whoever—

(1) in the District of Columbia or in interstate or foreign communication by means of telephone—

(A) makes any comment, request, suggestion or proposal which is obscene, lewd, lascivious, filthy, or indecent;

(B) *makes a telephone call, whether or not conversation ensues,* without disclosing his identity and *with intent to annoy, abuse, threaten, or harass any person at the called number;*

(C) makes or causes the telephone of another repeatedly or continuously to ring, with intent to harass any person at the called number; or

(D) makes repeated telephone calls, during which conversation ensues, solely to harass any person at the called number;

. . .

shall be [punished]." (Emphasis added to indicate language parallel to that in Connecticut telephone harassment statute.)

fied manner. As the Appellate Session of the Superior Court stated in *State v. Anonymous, supra,* 34 Conn.Supp. at 696, 389 A.2d at 1273, "[A] recital on the telephone of the most sublime prayer with the intention and effect of harassing the listener would fall within its ban as readily as the most scurrilous epithet." Indeed, by its express terms the statute may be violated where no conversation at all occurs.

■ In considering appellant's claim that the Connecticut statute is overbroad on its face and sweeps within its purview communication which is protected by the First Amendment, we must be guided by the standard enunciated by the Supreme Court in *Broadrick v. Oklahoma,* 413 U.S. 601, 615 (1973):

"[W]here conduct and not merely speech is involved, we believe that the overbreadth of a statute must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep."

The asserted overbreadth of the Connecticut statute is circumscribed by the elements of the offense it proscribes. To run afoul of the statute, a telephone call must be made not merely to communicate, but "with intent to harass, annoy or alarm" and "in a manner likely to cause annoyance or alarm." Whether speech actually occurs is irrelevant, since the statute proscribes conduct, whether or not a conversation actually ensues. *United States v. Lampley, supra,* 573 F.2d at 787.

[4] Harassing telephone calls are an unwarranted invasion of privacy. They appear to be on the increase. They are properly outlawed by federal and state statutes. The possible chilling effect on free speech of the Connecticut statute strikes us as minor compared with the all-too-prevalent and widespread misuse of the telephone to hurt others. The risk that the statute will chill people from, or prosecute them for, the exercise of free speech is remote. The evil against which the statute is directed is both real and ugly.

■ We hold that the Connecticut telephone harassment statute is not unconstitutionally overbroad on its face.[5]

5. The Connecticut statute is readily distinguishable from the telephone harassment statutes which were held unconstitutionally overbroad in cases relied on by appellant such as *Walker v. Dillard,* 523 F.2d 3 (4 Cir.), *cert. denied,* 423 U.S. 906 (1975), and *Radford v. Webb,* 446 F.Supp. 608 (W.D.N.C.1978), *aff'd per curiam,* 596 F.2d 1205 (4 Cir. 1979). In both cases the *statutes punished speech alone.* The statute involved in *Walker* made it unlawful for any person to "curse or abuse anyone, or use vulgar, profane, threatening or indecent language" over the telephone. *Walker v. Dillard, supra,* 523 F.2d at 4 n.1. In *Radford* the statute outlawed the use in telephone communications of "any words or language of a profane, vulgar, lewd, lascivious or indecent character, nature or connotation", *Radford v. Webb, supra,* 446 F.Supp. at 610, and hence "would reach comments made in the course of heated argument or expressions of justified indignation just as easily as . . . the traditional obscene phone call." *Id.* at 610-11.

We are mindful that the courts of several states have struck down telephone harassment statutes as unconstitutionally overbroad. *Bolles v. People,* 189 Colo. 394, 541 P.2d 80 (1975); *People v. Klick,* 66 Ill.2d 269, 362 N.E.2d 329 (1977); *State v. Dronso,* 90 Wis.2d 149, 279 N.W.2d 710 (1979). Accordingly, we have been invited likewise to hold unconstitutional the Connecticut statute or, at least, to caution the

Connecticut courts in the future to construe the statute narrowly so as to eliminate any overbreadth. We decline the invitation.

We note that our concurring colleague would not decline the invitation to caution the Connecticut courts to construe the statute narrowly so as to eliminate any overbreadth. Accordingly, we suggest that Judge Mansfield's concurring opinion should be read in the light of the following observations.

First, it is not the proper function of the federal courts independently to construe a state statute so as to eliminate its overbreadth, if any, for that can be done only by the state. *Gooding v. Wilson,* 405 U.S. 518 (1972). What the Supreme Court has cautioned us should not be done directly surely should not be done by implication, as our concurring colleague would do by way of dictum.

Second, since in our view the Connecticut statute is not overbroad, "whatever overbreadth may [be said to] exist should be cured through case-by-case analysis of the fact situations to which its sanctions, assertedly, may not be applied." *Broadrick v. Oklahoma, supra,* 413 U.S. at 615-16.

Third, having in mind that the Supreme Court has never struck down, or sanctioned the striking down of, a state telephone harassment stat-

## III

■ Appellant also claims that the Connecticut statute is unconstitutionally overbroad as applied to her. We disagree.

Her claim in this respect is based on the state trial court's charge which focused the jurors' attention on the content of the telephone call. Our careful examination of the charge as a whole satisfies us that the trial court's instruction that the jury was entitled to consider "the language that was used in the course of the telephone call" was for the purpose of enabling the jury to determine whether the state had proven the essential element of *intent* as required by the statute. As the Third Circuit stated in *United States v. Lampley, supra,* 573 F.2d at 787, "Whether or not the actual conversation contains harassing language may be relevant to the question of intent."

In the instant case, we believe that the trial court's instruction to the jury to consider the language used by appellant in the course of the telephone call not only was permissible; it was indispensable to a proper determination of whether the statutory requirement of "intent to harass" had been proven.

■ We hold that the Connecticut telephone harassment statute is not unconstitutionally overbroad as applied to appellant.

Appellant was convicted on the basis of overwhelming evidence of a serious crime committed more than five years ago—violation of the Connecticut telephone harassment statute. Her attack upon the constitutionality of that statute has been carefully considered and uniformly rejected by the Connecticut state courts, by a federal magistrate, by a federal district judge and by this Court. We order that the mandate issue forthwith.

Affirmed.

MANSFIELD, Circuit Judge (concurring):

I concur on the limited ground that the Connecticut telephone harassment statute, Conn.Gen.Stat.Ann. § 53a–183(a)(3) (Rev. 1958, Supp.1979), if narrowly construed by the Connecticut Supreme Court to apply only to speechless calls or to obscene or threatening calls of the type involved in this case, may be upheld if so construed. Unfortunately since appellant took no exception to the trial judge's charge to the jury, the judge was never afforded the opportunity to so construe the statute and instruct the jury in terms of the narrower construction. However, I believe the Connecticut Supreme Court should be afforded the opportunity to construe the statute so that it will not penalize the exercise of First Amendment free speech rights.[1] If it were

ute, we should bear in mind that the Court in *Broadrick* could hardly have admonished more emphatically against facial overbreadth adjudication of a state statute by the federal courts:

"[F]acial overbreadth adjudication is an exception to our traditional rules of practice and that its function, a limited one at the outset, attenuates as the otherwise unprotected behavior that it forbids the State to sanction moves from 'pure speech' toward conduct and that conduct—even if expressive—falls within the scope of otherwise valid criminal laws that reflect legitimate state interests in maintaining comprehensive controls over harmful, constitutionally unprotected conduct. Although such laws, if too broadly worded, may deter protected speech to some unknown extent, there comes a point where that effect—at best a prediction—cannot, with confidence, justify invalidating a statute on its face and so prohibiting a State from enforcing the statute against conduct

that is admittedly within its power to proscribe." 413 U.S. at 615 (citation omitted). Fourth, the references throughout the concurring opinion to "speechless calls" (e. g. "repeated speechless calls of the type presented here") appear to be misdirected. This case does not involve speechless calls.

In short, having carefully considered Judge Mansfield's concurring opinion, we adhere to our majority opinion in all respects.

1. The Connecticut Supreme Court denied certification without opinion, *State v. Gormley,* 174 Conn. 803, 382 A.2d 1332 (1978). This denial reflects nothing on the Connecticut Supreme Court's opinion of the merits of this case. "[A] denial of certification does not necessarily indicate our approval either of the result reached by the Appellate Division or of the opinion rendered by it." *State v. Chisholm,* 155 Conn. 706, 707, 236 A.2d 465, 466 (1968). Accord, *State v. Doscher,* 172 Conn. 592, 376 A.2d 359 (1977).

not so construed, the statute would clearly be void for overbreadth.

No person enjoys being the victim of repeated speechless calls of the type presented here. The state has a legitimate interest in protecting persons against such unwarranted invasion of privacy by others. See *Miller v. California*, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973); *Rowan v. Post Office Department*, 397 U.S. 728, 90 S.Ct. 1484, 25 L.Ed.2d 736 (1970). On the other hand, the First Amendment right of a person to communicate with another by telephone, even if the call may be considered "harassing" by the recipient, must also be respected.

Telephone calls by irate citizens to their Congressmen, by collectors seeking payment of legitimate bills overdue, by customers voicing to a seller dissatisfaction with goods or services purchased, and calls of like tenor, are likely to be annoying, even harassing, to the recipients. Such calls are usually made to influence the person called. No one could seriously question the caller's free speech right under the First Amendment to engage in such telephone conversations. Yet, by prohibiting telephone calls made "with intent to annoy" and "in a manner likely to cause annoyance," the Connecticut statute could be construed as prohibiting the exercise of this free speech. Thus, the fact that the statute also prohibits the mere making of telephone calls where no speech follows hardly saves it from unconstitutional overbreadth. It is no comfort to the citizen telephoning his Congressman or to the defrauded consumer calling the swindler to know that the statute was not intended to apply to their telephone calls if its language plainly does so. The mere existence of a statute prohibiting such obviously lawful exercise of a free speech right has a chilling effect, particularly if enforcement is threatened by the recipient of a call.

Labelling the statute as one prohibiting "conduct" does not resolve this constructional dilemma. In most cases the "conduct" punished is the oral communication rather than the ringing of the telephone bell. The statute is not limited to the mere making of speechless telephone calls; were that the case, its constitutionality would be upheld. See, *Cox v. Louisiana*, 379 U.S. 536, 555, 85 S.Ct. 453, 464, 13 L.Ed.2d 471 (1964). Cf., *Palma v. Powers*, 295 F.Supp. 924, 941 (D.C.Ill.1969) (telephone service is not speech protected by the First Amendment). Indeed a statute prohibiting obscene, threatening, or speechless calls, made with intent to harass, would probably pass constitutional muster. But if the statute here were construed, as it easily could be, to prohibit any telephone call made "with intent to annoy," which had such effect, it would patently violate the First Amendment. The overbreadth would not only be real, but substantial. *Broadrick v. Oklahoma*, 413 U.S. 601, 615, 93 S.Ct. 2908, 2917, 37 L.Ed.2d 830 (1973).

Nor do any of the authorities relied upon by the majority support the view that such a potentially overbroad statute is constitutional on its face; on the contrary, most of the decided cases are to the contrary. Although the Third Circuit, in *United States v. Lampley*, 573 F.2d 783 (3d Cir. 1978), upheld the federal telephone harassment statute, 47 U.S.C. § 223, it did so against a claim of *vagueness*, not overbreadth. Nothing in the decision supports the majority's citation of it as rejecting an overbreadth challenge, as is made here. In contrast, several courts have struck down similar telephone harassment statutes as overbroad. See, e. g., *People v. Klick*, 66 Ill.2d 269, 5 Ill.Dec. 858, 859, 362 N.E.2d 329 (1977) (Illinois statute providing that "A person commits disorderly conduct when he knowingly: . . . (2) with intent to annoy another, makes a telephone call, whether or not a conversation thereby ensues."); *State v. Dronso*, 90 Wis.2d 149, 279 N.W.2d 710 (1979) (Wisconsin statute providing that one is guilty of disorderly conduct if "[w]ith intent to annoy another, [he] makes a telephone call, whether or not a conversation ensues."). See also, *Bolles v. People*, 189 Colo. 394, 541 P.2d 80 (1975) (Colorado statute providing that one commits harassment if, "with intent to harass, annoy or alarm another person, he: . . . communi-

cates anonymously or otherwise, by telephone, telegraph, mail or any other form of communication in a manner likely to harass or cause alarm.").

The state may not abridge one's First Amendment freedoms merely to avoid annoyances. *Coates v. Cincinnati*, 402 U.S. 611, 91 S.Ct. 1686, 29 L.Ed.2d 214 (1971). "The ability of government, consonant with the Constitution, to shut off discourse solely to protect others from hearing it is, in other words, dependent upon a showing that substantial privacy interests are being invaded in an essentially intolerable manner." *Cohen v. California*, 403 U.S. 15, 21, 91 S.Ct. 1780, 1786, 29 L.Ed.2d 284 (1971).

Moreover, the First Amendment protects more than just amiable communications. See, *Norwell v. City of Cincinnati*, 414 U.S. 14, 94 S.Ct. 187, 38 L.Ed.2d 170 (1973); *Gooding v. Wilson*, 405 U.S. 518, 92 S.Ct. 1103, 31 L.Ed.2d 408 (1972); *Terminiello v. City of Chicago*, 337 U.S. 1, 69 S.Ct. 894, 93 L.Ed. 1131 (1948); *Chaplinsky v. New Hampshire*, 315 U.S. 568, 62 S.Ct. 766, 86 L.Ed. 1031 (1942). A telephone harassment statute should be carefully tailored to avoid constitutional vulnerability on the ground that it needlessly penalizes free speech.

Applying these principles here, I am forced to conclude that, depending on how it is construed by the Connecticut Supreme Court, Conn.Gen.Stat. § 53a–183(a)(3) (Rev. 1958, Supp.1979), might be constitutionally vulnerable for overbreadth. Since we are precluded from construing this state statute, *Gooding v. Wilson*, 405 U.S. at 520, 92 S.Ct. at 1105, and a narrow construction by the Connecticut Supreme Court would lead to the statute's being upheld as applied to the facts of this case, I concur in the result reached by the majority. Should the Connecticut Supreme Court, however, interpret the statute broadly to encompass constitutionally protected free speech, as distinguished from obscene, threatening or speechless telephone calls made with intent to harass the recipient, I would then feel compelled to declare the statute unconstitutional on its face.