STATE of Wisconsin, Plaintiff-Respondent,

v.

Arthur Jerome ROBINSON, Defendant-Appellant.†

Court of Appeals

*No. 86–1789–CR. Submitted on briefs May 5, 1987.—Decided
July 14, 1987.*

(Also reported in 412 N.W.2d 535.)

† Petition to review denied.

For the plaintiff-respondent the cause was submitted on the briefs of *Donald J. Hanaway,* attorney general, with *Jerome S. Schmidt,* assistant attorney general of counsel, of Madison.

For the defendant-appellant the cause was submitted on the briefs of *Donna L. Hintze,* assistant state public defender, of Milwaukee.

Before Moser, P.J., Wedemeyer and Sullivan, JJ.

MOSER, P.J. Arthur Jerome Robinson (Robinson) appeals from a judgment convicting him of robbery while possessing a dangerous weapon, contrary to secs. 943.32(1)(b) and 939.63(1)(a)2, Stats.,

false imprisonment while possessing a dangerous weapon, contrary to secs. 940.30 and 939.63(1)(a)4, Stats., and possession of a firearm by a felon, contrary to sec. 941.29(1)(a) and (2), Stats., and an order denying his request to vacate the judgment of conviction or to grant him a new trial. On appeal, Robinson argues that he was denied due process because the robbery charge was improperly enhanced under sec. 939.63(1)(a)2, which resulted in his conviction for robbery while possessing a dangerous weapon. In addition, Robinson contends he was denied his state and federal due process rights when the prosecutor raised the issue of his postarrest silence during both his cross-examination of Robinson and his closing argument. We affirm.

A criminal complaint was originally filed charging Robinson with armed robbery, contrary to sec. 943.32(1)(b) and (2), Stats. At the preliminary hearing, however, the victim, Glenda Miller (Miller), became confused as to whether Robinson pulled out a gun before or after the robbery occurred. First she testified that "[h]e asked me did I have the money before he pulled out the gun." Miller later stated that she was not sure when Robinson pulled out the gun.

Following the preliminary hearing, an information was filed charging Robinson with, among other things, robbery while possessing a dangerous weapon, contrary to secs. 943.32(1)(b) and 939.63(1)(a)2, Stats. Robinson was convicted of these charges.

On appeal, Robinson contends that the penalty enhancer under sec. 939.63, Stats., is inapplicable to the crime of robbery since a more specific penalty enhancer for robbery is found in sec. 943.32(2), Stats. Thus, Robinson argues that he was denied due process when he was convicted under the erroneous penalty

enhancer. Therefore, that portion of the judgment of conviction relating to the penalty enhancer for robbery while possessing a dangerous weapon must be vacated and he should be resentenced for robbery alone. We disagree.

The issue of whether sec. 939.63, Stats., can be used in conjunction with the robbery statute is a question of statutory construction which is a question of law. We, therefore, need not give special deference to the trial court's decision.[1]

■■■

Our purpose in construing a statute is to ascertain and give effect to the intent of the legislature. In construing a statute the primary source of construction is the language of the statute itself. If the meaning of the statute is clear and unambiguous on its face, resort to extrinsic aids for the purpose of statutory construction is improper. A statute is ambiguous when it is capable of being understood by reasonably well-informed persons in two or more different senses.[2]

Turning to the language of the statutes in question, we note that both secs. 939.63 and 943.32, Stats., are clear and unambiguous. Therefore, we need only look to the language of the statutes themselves for purposes of statutory construction. Section 939.63(1)(a) provides for an increase in the maximum term of imprisonment for crimes committed "while *possessing*, using or threatening to use a dangerous weapon." (Emphasis added.) Under sec. 939.63(1)(b), however, "[t]he increased penalty provided in this

[1]*State v. Denter,* 121 Wis. 2d 118, 122, 357 N.W.2d 555, 557 (1984).

[2]*Id.* at 122–23, 357 N.W.2d at 557.

subsection does not apply if possessing, using or threatening to use a dangerous weapon is an essential element of the crime charged."

Section 943.32, Stats., defines robbery as:

> (1) Whoever, with intent to steal, takes property from the person or presence of the owner by either of the following means is guilty of a Class C felony:
> (a) By using force against the person of the owner with intent thereby to overcome his physical resistance or physical power of resistance to the taking or carrying away of the property; or
> (b) By threatening the imminent use of force against the person of the owner or of another who is present with intent thereby to compel the owner to acquiesce in the taking or carrying away of property.
> (2) Whoever violates sub. (1) by use or threat of use of a dangerous weapon or any article used or fashioned in a manner to lead the victim reasonably to believe that it is a dangerous weapon is guilty of a Class B felony.

Robinson argues that secs. 939.63 and 943.32, Stats., conflict. According to Robinson, because sec. 943.32 contains its own more specific penalty enhancer, the general penalty enhancer contained in sec. 939.63 cannot be applied to a charge of robbery. We disagree.

██

Statutes relating to the same subject matter are to be construed together and harmonized.[3] Reading secs. 939.63 and 943.32, Stats., together, we conclude

---

[3]*State v. Burkman,* 96 Wis. 2d 630, 642, 292 N.W.2d 641, 647 (1980).

that they do not conflict as Robinson contends, but can be reasonably construed together.

We agree with Robinson that in sec. 943.32(2), Stats., the legislature specifically provided for increased penalties for armed robberies. These increased penalties, however, only apply when a robbery is committed while using or threatening the use of a dangerous weapon. Section 943.32 is silent regarding the use of increased penalties for a robbery committed while merely possessing a dangerous weapon, as occurred in this case.

While sec. 943.32, Stats., is silent on this issue, sec. 939.63, Stats., the general penalty enhancing statute, is not. Based on the clear and unambiguous language of sec. 939.63, we conclude that when a robbery is committed while possessing a dangerous weapon, the penalty enhancer under sec. 939.63 can be applied. Only when a robbery is committed while using or threatening to use a dangerous weapon does the more specific penalty under sec. 943.32(2) apply over the general penalty enhancing statute. This interpretation does not conflict with any of the provisions of sec. 939.63 since sec. 939.63(1)(b) clearly states that it does not apply in cases where using or threatening to use a dangerous weapon is an essential element of the crime charged. This provision eliminates the possibility that secs. 939.63 and 943.32 overlap or conflict.

Based on the above, we conclude that the penalty enhancing statute, sec. 939.63, Stats., can be applied to a charge of robbery under sec. 943.32(1), Stats. Therefore, Robinson was not denied due process when he was convicted under both secs. 943.32(1)(b) and 939.63(1)(a)2.

Robinson next contends that his due process rights under the state and federal constitutions were violated when the prosecutor raised the issue of Robinson's postarrest silence during both his cross-examination of Robinson and his closing argument. After reviewing the record and remarks of the prosecutor, we reject Robinson's argument on this issue.

During trial, Robinson testified that he did not rob Miller and that Miller willingly went for a ride with him in his car. To support his testimony, Robinson stated that Miller had written her name and address on a card which she gave to Robinson so he could get in touch with her at a later date. Robinson stated that he stuck the card above the car's windshield.

Following his arrest, Robinson did not mention the existence of the card to the police. On cross-examination the prosecutor questioned Robinson as to whether he had told the police about the card, which could not be located.

Q Well you were telling them what your side of the story was; correct?

A We didn't really get into full detail.

Q Did you at any time ever tell the police about this supposed card that Glenda Miller had written on?

A I didn't even—what I'm telling you, that we didn't have no serious discussion. That's what I'm saying.

Q Couldn't you just say hey, look, Glenda Miller was in my car. She was there voluntarily. In fact, she even wrote her name on a card, and I'll show you where it is?

A It could have happened, but it didn't happen.

Q You decided not to tell them about any card; right?

A What would I tell them about a card for? I'm concerned about what they charged me with, not about the card. That's why I didn't advise my attorney to really look for the card at first.

Q Well wouldn't that card show that she was voluntarily in your car if she had given you her name?

A I guess so. I don't know. I'm concerned about them charging me with robbery.

Q Well didn't—

A That's what I'm concerned about, Mr. Cook.

Q Didn't that thought occur to you that that would show that she was voluntarily in your car, if she had written her name down on some card and given it to you?

A That thought did never occur to me, no.

Q It never occurred to you?

A No, it did not.

Q It occurred later on when you told your attorney about this card that was allegedly in your car though?

A Yes. The card was in my car.

Q That is long after the car had been towed away; correct?

A That was when I got to Milwaukee to my lawyer, right. That's when I admit to the card.

During closing argument the prosecutor again raised the issue of Robinson's failure to tell the police about the card.[4]

While Robinson now objects to the prosecutor's questions and remarks, no objection was made during trial. As Robinson points out, however, such failure does not waive the right to raise the issue on appeal. An objection at the trial is unnecessary to preserve the right to raise constitutional errors on appeal.[5] We now turn to whether constitutional error was committed upon the admission of Robinson's testimony that he did not tell the police about the card Miller wrote her name and address on.

Robinson argues that the prosecutor's cross-examination resulted in an impermissible comment on his

---

[4]Robinson objects to the following portion of the prosecution's closing argument:

> And not only is it ridiculous, ladies and gentlemen, but then the defendant not only does he tell you that, but he tries to suggest to you through this testimony and through some of the stipulations that well, I can't find the card, this card that would really help me show that Glenda Miller was there voluntarily. And why? Because that card is not around. He never bothered to tell the police that Glenda Miller had written any card. Now wouldn't you think that was important? If you were Arthur Jerome Robinson, the police arrest you for armed robbery and false imprisonment of a girl and in essence tell you that this girl said you robbed her and then took her in the car and so forth, wouldn't you think that that would be extremely important, that you would want to say look, there is a card that she wrote? And even if it doesn't have her real name on it, well there is some handwriting, and maybe we could try to have that handwriting analyzed to see if she wrote on it? And in fact, if it's her real name on there, boy, wouldn't that be something really important to show whether or not Glenda Miller was in that car voluntarily? Of course, it would be.

[5]*Odell v. State,* 90 Wis. 2d 149, 155, 279 N.W.2d 706, 709 (1979).

constitutional right to remain silent. To support this argument he relies on *Doyle v. Ohio*,[6] *Odell v. State*,[7] and *Reichhoff v. State*.[8] These cases all involved defendants who invoked their right to silence either by refusing to talk at all or by refusing to answer particular questions. In this case, however, there is no evidence in the record to conclude that Robinson chose to invoke his constitutional right to remain silent at the time of his arrest. Rather, Robinson gave the police who questioned him a statement of his version of the facts of the incident. This is not a case where Robinson was silent during questioning or failed to answer certain questions. Robinson stated that when he was questioned by the police he did not mention the card because he was more concerned with what he was charged with, and he did not believe that the card was very important. He stated that he subsequently told his attorney of the existence of the card to support his story that Miller came with him voluntarily.

We conclude that the prosecutor's comments on Robinson's failure to inform the police of the existence of the card were not aimed at Robinson's silence at the time of his arrest but at his credibility.[9] Similarly, we conclude that the prosecutor's comments during closing argument also did not unconstitutionally infringe on Robinson's right to remain silent at the time of his

[6]426 U.S. 610 (1976).

[7]90 Wis. 2d 149, 279 N.W.2d 706 (1979).

[8]76 Wis. 2d 375, 251 N.W.2d 470 (1977).

[9]*See Ryan v. State,* 95 Wis. 2d 83, 98, 289 N.W.2d 349, 356 (Ct. App. 1980).

arrest. Therefore, Robinson was not denied his right to due process under the state and federal constitutions.

*By the Court.*—Judgment and order affirmed.