STATE of Wisconsin, Plaintiff-Appellant,†

v.

Arthur WEST, Defendant-Respondent.

Court of Appeals

*No. 93–2298–CR. Submitted on briefs February 4, 1994.—Decided March 2, 1994.*

(Also reported in 515 N.W.2d 484.)

†Petition to review denied.

On behalf of the plaintiff-appellant, the cause was submitted on the brief of *James E. Doyle*, attorney general, and *Shelly Jean Rusch*, assistant district attorney.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Terry W. Rose* of *Rose & Rose* of Kenosha.

Before Anderson, P.J., Brown and Nettesheim, JJ.

BROWN, J. Section 939.45(5), STATS., accords a physical discipline privilege to parents, guardians and "person[s] legally responsible for the child's welfare in a residential setting" as a defense to prosecution for battery of a child under their care. The issue is whether foster parents come within that privilege. We hold that they do because the ordinary meaning of "person[s] legally responsible for the child's welfare in a residential setting" includes foster parents; therefore, we affirm the trial court.

The facts material to this issue are undisputed. Arthur West, along with his wife, provided licensed foster care in Kenosha County to two boys aged five and three, Mario and Keishon. When the boys returned home, their mother discovered purple bruising on Mario's and Keishon's backsides. Both boys said they were struck by West. After examining the boys, a physician concluded that the injuries were inflicted while the boys were in West's care.

The State charged West with two counts of physical abuse to a child contrary to § 948.03(2)(b), STATS. The jury found West not guilty of count one, charging

48

physical abuse to Mario, but was unable to agree unanimously on count two, charging physical abuse to Keishon. At trial, the court read to the jury the instruction in WIS J I—CRIMINAL 950 about the physical discipline privilege.[1] Before retrial of count two, the State filed a motion in limine asking the trial court to rule that West, as a foster parent, was not entitled to claim the defense of parental discipline privilege pursuant to § 939.45(5), STATS. The trial court ruled that West was entitled to claim the privilege as a "person legally responsible for the child's welfare in a residential setting." *See* § 939.45(5)(a)3. Subsequently, we granted the State's petition for leave to appeal the trial court's nonfinal order addressing the privilege.

Section 939.45(5)(b), STATS., provides that an actor's conduct which is "reasonable discipline of a child by a person responsible for the child's welfare" is privileged. Paragraph (a) defines "person responsible for the child's welfare" to include parents, guardians and "any other person legally responsible for the child's welfare." Section 939.45(5)(a)3.

■

The State raises several arguments about the meaning of the phrase "person legally responsible for the child's welfare" in § 939.45(5), STATS. Statutory construction is a question of law which we review without deference to the trial court. *Town of Sheboygan v. City of Sheboygan*, 150 Wis. 2d 210, 212, 441 N.W.2d 752,

---

[1] WIS J I—CRIMINAL 950 reads in part:

> The privilege of reasonable discipline allows a person responsible for the child's welfare to use reasonable force to discipline that child. A person is not guilty of (crime charged) if the force used is such that a reasonable person would believe it is necessary. Any use of force or other act in excess of this limit is not privileged. [Footnote omitted.]

753 (Ct. App. 1989). In construing a statute, the primary source is the language of the statute itself. *Id.* at 213, 441 N.W.2d at 753. If that language is unambiguous, we give the language its ordinary meaning. *State v. Gonzalez*, 172 Wis. 2d 576, 581, 493 N.W.2d 410, 412 (Ct. App. 1992). In determining the plain and unambiguous meaning, we also consider sections related to the statute and presume that the legislature carefully chose its terms to express its meaning. *Id.*

We hold that § 939.45(5), STATS., is unambiguous. The statutory and administrative provisions pertaining to the licensing of foster homes, § 48.62, STATS., and WIS. ADM. CODE ch. HSS 56, impose legal responsibilities on foster parents for the welfare of children in their care. For example, § 48.62 requires licensing of all foster parents, and all licensed foster parents must meet the requirements set forth in WIS. ADM. CODE ch. HSS 56. WISCONSIN ADM. CODE § HSS 56.02(13) defines "foster parent" as "a person with primary responsibility for the care and supervision of one or more foster children placed in his or her home." WISCONSIN ADM. CODE § HSS 56.07(1) provides that the "foster parents shall provide humane and nurturing care to each child placed in the foster home" and further defines this required care.

Further, the purpose of ch. HSS 56 "is to protect the health, safety and welfare of children placed in foster homes." WISCONSIN ADM. CODE § HSS 56.01. In furtherance of this purpose, this chapter delineates the foster parent's responsibilities as a licensee. For instance, the foster parent is responsible for ensuring that the child has food, clothing, medical care and a safe place to live. WISCONSIN ADM. CODE §§ HSS 56.01-.10.

■
We decline to espouse the perilous proposition that foster parents are not "person[s] legally responsible" to fulfill the obligations under these sections for the child's welfare. We conclude that the ordinary meaning of § 939.45(5), STATS., is that foster parents are persons "legally responsible for the child's welfare."

■
The State argues that WIS. ADM. CODE § HSS 56.07(5)(c) prohibiting foster parents' use of "corporal punishment" is evidence of legislative intent not to allow foster parents the discipline privilege.[2] We reject this interpretation. This rule against corporal punishment was promulgated to carry out the licensing requirements under ch. 48, STATS., not to implement § 939.45(5), STATS. *See* WIS. ADM. CODE § HSS 56.01(2). As such, the rule is not evidence of the legislative intent of § 939.45(5). Furthermore, any violation of licensing requirements does not preclude West's assertion of a § 939.45(5) defense. His alleged conduct[3] subjects him to possible revocation of his foster home license. However, his alleged failure to fulfill all of his legal responsibilities for the welfare of Mario and Keishon does not affect his status as a "person legally responsible."

---

[2] West also signed an agreement acknowledging the licensing prohibition against corporal punishment and agreed not to use such punishment on children in his and his wife's care. The agreement defined corporal punishment as "any type of physical punishment, discipline or retaliation inflicted upon any part of the body of a child. . . .. This would include such actions as slapping, hitting, punching, spanking, shoving, pinching or any other type of action geared toward inflicting bodily pain or discomfort upon a child."

[3] During trial, West denied ever striking either child.

■

The State also argues that the words, "legally responsible for the child's welfare," mean "legal custodian" and cannot therefore include foster parents who are not legal custodians. We do not agree with that interpretation; if the legislature had wanted these words to mean "legal custodian," it could have used those specific words.

■

The State also contends that the legislative history of § 939.45(5), STATS., and rules of statutory construction indicate a legislative intent to exclude foster parents' use of the discipline privilege. We are mindful that resort to legislative history and rules of statutory construction is improper if the statute is clear and unambiguous.[4] *State v. Robinson*, 140 Wis. 2d 673, 676, 412 N.W.2d 535, 537 (Ct. App. 1987). Nonetheless, we will discuss the legislative history to meet the State's argument.

First, the State asks us to apply the principle of statutory construction that enumeration of specific alternatives in a statute is evidence of legislative intent that any alternative not specifically enumerated is to be excluded. In support, the State points out the interplay of §§ 939.45(5) and 948.01(3), STATS.,[5] both defining "person responsible for the child's welfare." The sections are similar, but differ in that § 948.01(3) specifically includes "foster parent," while § 939.45(5) is silent concerning "foster parent." The State contends

---

[4] Even if ambiguous, we would have to consider the rule of lenity that "penal statutes are generally construed strictly to safeguard a defendant's rights." *State v. Rabe*, 96 Wis. 2d 48, 70, 291 N.W.2d 809, 819 (1980) (internal quotation omitted).

[5] Chapter 948, STATS., organizes crimes against children in a single chapter.

52

that this difference indicates a legislative intent to hold a large category of persons responsible for the welfare of children and to provide fewer persons with absolute defenses to criminal liability. We disagree. Although § 939.45(5) contains specific illustrations of "person[s] legally responsible for the child's welfare," the section also includes the broader, more general category—"any other person legally responsible." To conclude that § 939.45(5) only applies to those persons specifically enumerated would make this phrase superfluous.

Next, the State discusses the legislative history of § 939.45(5), STATS., specifically Senate Amendment 6 to 1987 Senate Bill 203, wherein "foster parent" and persons "employed by one legally responsible for the child's welfare to exercise temporary control or care for the child" were deleted from the enumeration. *Compare* Senate Amendment 3 to 1987 S.B. 203 *with* Senate Amendment 6 to 1987 S.B. 203. We cannot say that this is the "smoking gun" showing the legislative intent espoused by the State. An equally reasonable view is that the legislature deleted foster parents because the more general category included them. We are loathe to ascribe a certain intent by the legislature without more explicit direction. Should the legislature deem it to be a wise policy choice that foster parents be excluded from the physical discipline privilege, it has the power to specifically say so.

*By the Court.*—Order affirmed.