FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee*,

v.

ROBERT WAGGY,
*Defendant-Appellant.*

No. 18-30171

D.C. No.
2:17-cr-00212-SAB-1

OPINION

Appeal from the United States District Court
for the Eastern District of Washington
Stanley Allen Bastian, District Judge, Presiding

Argued and Submitted July 11, 2019
Portland, Oregon

Filed September 5, 2019

Before: A. Wallace Tashima, Susan P. Graber,
and John B. Owens, Circuit Judges.

Opinion by Judge Graber;
Dissent by Judge Tashima

## SUMMARY[*]

### Criminal Law

The panel affirmed a conviction under the Assimilative Crimes Act for felony telephone harassment in violation of Washington Revised Code section 9.61.230(1)(a), (b), arising from the defendant's repeated telephone calls to a Veterans Administration medical center.

The defendant argued that section 9.61.230 violates the First Amendment as applied to him because he just wanted to talk about his medical care and the VA's unpaid bills, and didn't intend or want to harass the secretary who answered the calls. The panel held that section 9.61.230(1)(a) requires proof that the defendant specifically intended to harm the victim when initiating the call; and that as applied here, that requirement ensures that the defendant—who doesn't challenge the sufficiency of the jury's finding that he had the intent required by the statute—was convicted for his conduct, not for speech protected by the First Amendment.

The panel addressed other issues in a memorandum disposition.

Dissenting, Judge Tashima wrote that section 9.61.230(1) is unconstitutional under the First Amendment, as applied in this case, because it criminalizes speech that is—despite its vulgarity and harassing nature—public or political discourse protected by the First Amendment.

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

Matthew Campbell (argued), Federal Defenders of Eastern Washington & Idaho, Spokane, Washington, for Defendant-Appellant.

Timothy J. Ohms (argued), Assistant United States Attorney; Joseph H. Harrington, United States Attorney; United States Attorney's Office, Spokane, Washington; for Plaintiff-Appellee.

Eugene Volokh, Scott & Cyan Banister First Amendment Clinic, UCLA School of Law, Los Angeles, California; Aaron H. Caplan, Loyola Law School, Los Angeles, California; for Amici Curiae American Civil Liberties Union of Washington, Pennsylvania Center for the First Amendment, and Professors Aaron H. Caplan and Eugene Volokh.

Robert W. Ferguson, Attorney General; Megan D. Lin, Solicitor General's Office Fellow; Callie Castillo, Deputy Solicitor General; Office of the Attorney General, Olympia, Washington; for Amicus Curiae State of Washington.

**OPINION**

GRABER, Circuit Judge:

Defendant Robert Waggy repeatedly telephoned the Mann-Grandstaff Veterans Administration Medical Center ("Center"), a Department of Veterans Affairs ("VA") facility in Spokane, Washington. Some of those calls resulted in federal charges of telephone harassment in violation of Washington Revised Code section 9.61.230(1)(a), (b), which

applies to federal land in Washington State through the Assimilative Crimes Act, 18 U.S.C. § 13. A jury convicted Defendant of two of the charges. On appeal, he argues primarily that the Washington statute violates the First Amendment as applied to his conduct. We disagree and affirm. We resolve Defendant's jury instruction claims in a memorandum disposition filed concurrently with this opinion.

FACTUAL AND PROCEDURAL BACKGROUND

Defendant, a Marine Corps veteran, has an extensive history with the Center. At various times, Defendant has been barred from the premises because of his disruptive behavior and frequent threats. He was previously convicted of harassment and trespass for incidents involving the Center. Because Defendant is not allowed on the premises, he receives VA-authorized medical care through private physicians instead. The VA also restricts Defendant's contact with the Center. Defendant has one point of contact whom he is permitted to call—a "Care in the Community" Supervisor—and the Center established a phone line specifically for Defendant's use.

Defendant asserts that the VA owes him millions of dollars for various reasons and that, because the VA has failed to pay the debt, he is now the legal owner of the Center's land and facilities. Many of his telephone calls to VA employees addressed this dispute and his related threats to seize the Center by force.

In April 2016, Defendant called the Center several times in one day. Each time, he dialed the Spokane VA's 1-800 number and asked to speak to the director. Defendant was transferred to the director's office. Sandra Payne, one of the

Center's executive secretaries, answered the April 2016 calls, which underlie the charged counts.

Defendant was charged with two counts of violating Washington Revised Code section 9.61.230(1)(c) (Counts 1 and 6); one count of violating section 9.61.230(1)(a), (c) (Count 2); two counts of violating section 9.61.230(1)(a), (b) (Counts 3 and 4); and one count of violating section 9.61.230(1)(b) (Count 5). Section 9.61.230(1) provides in relevant part:

> (1) Every person who, with intent to harass, intimidate, torment or embarrass any other person, shall make a telephone call to such other person:

> (a) Using any lewd, lascivious, profane,[1] indecent, or obscene words or language, or suggesting the commission of any lewd or lascivious act; or

> (b) Anonymously or repeatedly or at an extremely inconvenient hour, whether or not conversation ensues; or

> (c) Threatening to inflict injury on the person or property of the person called or any member of his or her family or household;

> is guilty of a gross misdemeanor . . . .

---

[1] "Profane" was not included in the jury instructions in this case.

During his first call ("Count 2"),[2] Defendant demanded that the VA pay him $9.25 million or "get off [his] property." He threatened to come to the Center to seize the property and to "use force to defend himself." Payne testified that Defendant's threat frightened her and that he told her to "do [her] fucking job." After Payne asked Defendant to "be respectful and to keep the call professional," he screamed at Payne and called her a "fucking cunt." Payne testified that Defendant "was screaming, not just yelling. I mean, there's a difference between yelling and screaming. And he was screaming into the phone." Payne then hung up on Defendant; "I can handle yelling, I can handle screaming, but I can't handle being called names like that." Count 2 was dismissed by the magistrate judge at the conclusion of the government's case.[3]

Defendant immediately called back ("Count 3"). Payne testified:

> Payne: It's never over. He always calls back. So he called back.
>
> Question: How did you know he was calling back?
>
> Payne: His caller ID. It was the same phone number I had just hung up with. And when I picked up the phone, he was just screaming, still yelling, um, just obscenities.

---

[2] The government voluntarily dismissed Counts 1 and 6 before trial.

[3] The parties consented to having a magistrate judge conduct Defendant's jury trial.

Payne testified that Defendant used "a lot of F bombs," such as "Fuck everything. So, to do my, do my fucking job and to fucking listen[.]" Payne also testified that, except for the obscenities, she could not understand what Defendant's words meant. Asked whether she could "make sense of what he was saying at that point," Payne responded, "I really couldn't understand him on that . . . second call"; his tone was "[b]eyond elevated." Defendant hung up on Payne. The jury found Defendant guilty of Count 3.

Defendant called back a third time ("Count 4"). He reiterated his demands for "his property" or "his money." Payne informed Defendant that she would "take a message and get it to the appropriate department." Defendant called Payne a "fucking cunt" again. Payne hung up the phone, testifying that Defendant "was so irrational on the phone, he was just screaming, like screaming, um, and it made me scared. I didn't want to talk to him any more." The jury found Defendant guilty of Count 4.

Defendant called back again. Payne did not answer the phone, testifying that she felt that "it would never end." Defendant called yet again, and Payne refused to answer for the second time. Payne then walked away from her desk, so Defendant's final two phone calls also went unanswered. Those four calls were charged collectively as "Count 5." The jury found Defendant not guilty of Count 5.

Defendant filed a motion for judgment of acquittal, arguing that Washington Revised Code section 9.61.230(1)(a) was unconstitutional as applied to his conduct. The magistrate judge denied the motion and sentenced Defendant to five years' probation.

Defendant appealed his conviction to the district court. He argued that his conviction violated the First Amendment as applied to his conduct and that the jury instructions were misleading, overbroad, and vague. The district court affirmed. Defendant timely appeals. Reviewing de novo, *United States v. Laursen*, 847 F.3d 1026, 1031 (9th Cir. 2017), we affirm.

## DISCUSSION

The First Amendment provides that "Congress shall make no law . . . abridging the freedom of speech." U.S. Const. amend. I. "[A] law imposing criminal penalties on protected speech is a stark example of speech suppression." *Ashcroft v. Free Speech Coal.*, 535 U.S. 234, 244 (2002). The right to free speech, however, "is not absolute." *Ashcroft v. ACLU*, 535 U.S. 564, 573 (2002). Laws or policies that target conduct, but that burden speech only incidentally, may be valid. *See, e.g.*, *Virginia v. Hicks*, 539 U.S. 113, 123–24 (2003) (holding that the defendant had not shown that the contested policy "prohibits a 'substantial' amount of protected speech in relation to its many legitimate applications"). Additionally, there are traditional narrow carve-outs to the First Amendment, which allow Congress to restrict certain types of speech, "including obscenity, defamation, fraud, incitement, and speech integral to criminal conduct." *United States v. Stevens*, 559 U.S. 460, 468 (2010) (citations omitted).

"An as-applied challenge contends that the law is unconstitutional as applied to the litigant's particular speech activity, even though the law may be capable of valid application to others." *Foti v. City of Menlo Park*, 146 F.3d 629, 635 (9th Cir. 1998). Defendant argues that section

9.61.230 is unconstitutional as applied to him because he just "wanted to talk about his medical care and the VA's unpaid bills"; "he didn't intend to—or want to—harass Ms. Payne." That characterization of Defendant's intent is untenable in light of the jury's finding (the sufficiency of which Defendant does not challenge on appeal) that he had the intent required by Washington Revised Code section 9.61.230(1): the "intent to harass, intimidate, torment or embarrass any other person." Accordingly, in deciding whether the Washington telephone harassment statute is unconstitutional as applied to Defendant's conduct, we begin with the premise that, in making the calls, he intended to harass, intimidate, torment, or embarrass Payne.

Moreover, in determining whether section 9.61.230(1)(a) reaches protected speech as applied here, we must follow the Washington courts' construction of that statute.[4] *R.A.V. v. City of St. Paul*, 505 U.S. 377, 381 (1992). In *State v. Dyson*, 872 P.2d 1115, 1120 n.5 (Wash. Ct. App. 1994), the Washington Court of Appeals specifically rejected the contention that the statute would prohibit calls to a public

---

[4] Although Defendant was convicted of violating both subsection 9.61.230(1)(a) and (b), his First Amendment argument focuses on subsection 9.61.230(1)(a). Here, the jury returned a general verdict, and it is impossible to say whether the jury found Defendant guilty of subsection 9.61.230(1)(a) or (b) or both. Thus, if subsection 9.61.230(1)(a) is unconstitutional, the conviction cannot be upheld. *See Hedgpeth v. Pulido*, 555 U.S. 57, 58 (2008) (per curiam) ("A conviction based on a general verdict is subject to challenge if the jury was instructed on alternative theories of guilt and may have relied on an invalid one."); *Stromberg v. California*, 283 U.S. 359, 368 (1931) (holding that, when there is a general verdict, "the necessary conclusion from the manner in which the case was sent to the jury is that, if any of the clauses in question is invalid under the Federal Constitution, the conviction cannot be upheld").

official "in which swear words are used in order to persuade the recipient to do something." The court noted that "RCW 9.61.230(1) regulates conduct implicating speech, not speech itself. Although RCW 9.61.230(1) contains a speech component, it is clearly directed against specific conduct—making telephone calls with the intent to harass, intimidate, or torment another while using" obscene or threatening words. *Id.* at 1119 (citation omitted). The "statute primarily regulates conduct with minimal impact on speech." *Id.* at 1120. Indeed, to violate the telephone harassment statute, Washington state courts have held that the defendant must "form the specific intent to harass at the time the defendant initiates the call to the victim." *State v. Lilyblad*, 177 P.3d 686, 687 (Wash. 2008); *see also State v. Sloan*, 205 P.3d 172, 177 (Wash. Ct. App. 2009) (reiterating that telephone harassment requires the specific intent to harass at the time the defendant initiates the call); *State v. Meneses*, 205 P.3d 916, 919 (Wash. Ct. App. 2009) (same). The fact that subsection (b) prohibits repeated calls or calls made at an extremely inconvenient hour, even if not a single word is spoken, underscores the legislature's intention to target conduct, not speech.

*United States v. Popa*, 187 F.3d 672, 677 (D.C. Cir. 1999), is distinguishable. The court in *Popa* observed that, according to the defendant's testimony at trial, his "complaints about the actions of a government official were a significant component of his calls," *id.*, which is not the situation here.[5] Defendant's citations to cases concerning political speech are similarly distinguishable.

---

[5] To the extent that *Popa* is not distinguishable, its analysis is against the great weight of authority—including our own—as discussed in text below.

As applied here, the statute was properly cabined in accordance with the Washington courts' interpretation of it. That conclusion is made even clearer by the fact that, as the district court observed, Defendant "used the same language during the first phone call as he did during the third phone call" but was convicted only for the third call because the government failed to prove that he "formed the specific intent to harass Sandra Payne during that first phone call." In other words, the convictions are not for obscene speech, but rather for placing calls with the specific intent to harass. That Defendant included some criticism of the government does not necessarily imbue his conduct with First Amendment protection. *Cf. United States v. O'Brien*, 391 U.S. 367, 376 (1968) ("[The Court] cannot accept the view that an apparently limitless variety of conduct can be labeled 'speech' whenever the person engaging in the conduct intends thereby to express an idea."); *Knox v. Brnovich*, 907 F.3d 1167, 1180 (9th Cir. 2018) ("A message 'delivered by conduct that is intended to be communicative and that, in context, would reasonably be understood by the viewer to be communicative' is symbolic speech protected by the First and Fourteenth Amendments." (quoting *Clark v. Cmty. for Creative Non-Violence*, 468 U.S. 288, 294 (1984)). Similarly, because of the jury's finding that Defendant intended to harass Payne, we reject Defendant's argument that he was merely criticizing a government official. *See, e.g.*, *United States v. Poocha*, 259 F.3d 1077, 1082 (9th Cir. 2001) (holding that the First Amendment protects profane criticism directed at police and, in light of the record there, rejecting the government's claim that the defendant's speech constituted "fighting words"). We hold therefore that, as applied to Defendant, section 9.61.230(1)(a) regulates nonexpressive conduct and does not implicate First Amendment concerns. *Accord Dyson*, 872 P.2d at 1119

(rejecting a constitutional challenge and holding that, "[a]lthough [Washington Revised Code section] 9.61.230(1) contains a speech component, it is clearly directed against specific conduct—making telephone calls with the intent to harass, intimidate, or torment another while using" obscene or threatening words); *see also State v. Alphonse*, 197 P.3d 1211, 1217–18 (Wash. Ct. App. 2008) (reaffirming *Dyson*'s holding that the statute regulates conduct implicating speech, not speech itself); *State v. Alexander*, 888 P.2d 175, 179–80 (Wash. Ct. App. 1995) (noting that "the telephone harassment statute primarily regulates conduct, with minimal impact on speech," and that "[t]he gravamen of the offense is the thrusting of an offensive and unwanted communication upon one who is unable to ignore it").

The result that we reach is consistent with our analogous holding in *United States v. Osinger*, 753 F.3d 939 (9th Cir. 2014). In *Osinger*, the defendant was convicted of engaging in a course of harassing and intimidating conduct in violation of the federal cyberstalking statute. *Id.* 940–41. We rejected the defendant's First Amendment challenge because the statute in question "proscribes harassing and intimidating conduct" and not speech, even though speech (text messages and emails) was involved in the defendant's conduct. *Id.* at 944. We emphasized that the statute requires malicious intent, as well as harm to the victim. *Id.* Other circuits also have upheld the constitutionality of the federal cyberstalking statute because it "targets conduct performed with serious criminal intent, not just speech." *United States v. Sayer*, 748 F.3d 425, 435 (1st Cir. 2014); *accord United States v. Conlan*, 786 F.3d 380, 386 (5th Cir. 2015); *United States v. Petrovic*, 701 F.3d 849, 856 (8th Cir. 2012).

The requirement of a specific intent to harass—the mens rea element contained in the Washington statute—has led other circuits to uphold telephone harassment statutes against First Amendment challenges. *See, e.g.*, *Thorne v. Bailey*, 846 F.2d 241, 244 (4th Cir. 1988) (upholding a conviction for telephone harassment under West Virginia law, against an as-applied First Amendment challenge, because of the intent requirement); *Gormley v. Dir., Conn. State Dep't of Prob.*, 632 F.2d 938, 941–42 (2d Cir. 1980) (holding that Connecticut's telephone harassment statute "regulates conduct, not mere speech [because] [w]hat is proscribed is the making of a telephone call, with the requisite intent and in the specified manner"); *United States v. Lampley*, 573 F.2d 783, 787 (3d Cir. 1978) (upholding a conviction under the federal telephone harassment statute, against a First Amendment challenge, because of the intent requirement).[6]

Similarly, many state courts have upheld, against First Amendment challenges, telephone harassment statutes that require a specific intent to harass. *See, e.g.*, *State v. Brown*, 85 P.3d 109, 113 (Ariz. Ct. App. 2004) (holding that statutes containing a specific intent requirement while prohibiting certain types of communication do not implicate the First Amendment because they prohibit harassment, not speech); *Gilbreath v. State*, 650 So. 2d 10, 12 (Fla. 1995) (upholding a telephone harassment statute because the provision is not directed at the communication of an opinion or idea but, instead, at the conduct of making a call with the intent to

---

[6] *See also United States v. Sandhu*, 740 F. App'x 595 (9th Cir. 2018) (unpublished decision) (upholding a conviction for harassing telephone calls under 47 U.S.C. § 223(a)(1)(D) against a First Amendment challenge, because the statute regulates conduct, not speech). Although that decision is not binding on us, we find it persuasive.

annoy, abuse, threaten, or harass the recipient); *McKillop v. State*, 857 P.2d 358, 364 (Alaska Ct. App. 1993) (holding that a statute prohibiting obscene telephone calls made with the intent to harass another did not violate the First Amendment so long as calls with a legitimate communicative purpose are permitted); *People v. Taravella*, 350 N.W.2d 780, 785 (Mich. Ct. App. 1984) (holding that Michigan's statute punishing misuse of communications services targets conduct even though a speech component is involved); *State v. Camp*, 295 S.E.2d 766, 768 (N.C. Ct. App. 1982) (holding that a statute prohibiting misuse of a telephone regulates conduct rather than speech and, therefore, survives a constitutional challenge); *von Lusch v. State*, 387 A.2d 306, 310 (Md. Ct. Spec. App. 1978) (holding that the First Amendment does not protect the use of a telephone with the specific intent to annoy and harass the recipient of the call); *People v. Smith*, 392 N.Y.S.2d 968, 970–71 (N.Y. App. Term 1977) (upholding a conviction for harassment against an as-applied constitutional challenge because the defendant's intent was to harass, not to communicate).

In sum, Washington Revised Code section 9.61.230(1)(a) requires proof that the defendant specifically intended to harm the victim when initiating the call. As applied here, that requirement ensures that Defendant was convicted for his conduct, not for speech protected by the First Amendment.

**AFFIRMED.**

TASHIMA, Circuit Judge, dissenting:

The majority opinion holds that the telephone harassment statute, Wash. Rev. Code § 9.61.230(1), does not implicate the First Amendment because it criminalizes conduct rather than speech—that is, making a telephone call to another person. Respectfully, because I cannot agree with that conclusion, I dissent. I am ultimately persuaded that this telephone harassment statute is unconstitutional under the First Amendment, as applied in this case, because it criminalizes speech that is—despite its vulgarity and harassing nature—public or political discourse protected by the First Amendment.

I am persuaded of this view by *United States v. Popa*, 187 F.3d 672 (D.C. Cir. 1999), which reversed a conviction under a telephone harassment statute in strikingly similar circumstances. There, Popa left repeated racist insults on the answering machine of the United States Attorney for the District of Columbia. Over the course of a month, Popa made seven telephone calls, in two of which he referred to the U.S. Attorney as "a criminal, a negro," a "criminal with cold blood," and a "whore, born by a negro whore." *Id.* at 673. By any account, these would be considered harassing messages. Popa also testified that he called the U.S. Attorney's office, "among other things, to complain about having been assaulted by police officers and about the prosecutor's conduct of a case against him." *Id.* at 677. Popa was charged with violating 47 U.S.C. § 223(a)(1)(C), which makes it a crime to:

> make[ ] a telephone call or utilize[ ] a telecommunications device whether or not conversation or communication ensues, . . .

> with intent to annoy, abuse, threaten, or harass any person at the called number or who receives the communications.

*Id.* at 674.   Both the federal statute in *Popa* and the Washington statute here have near-identical intent requirements.  The Washington statute provides:

> Every person who, with the intent to harass, intimidate, torment, or embarrass any other person, shall make a telephone call to such other person:  (a) using any lewd, lascivious, profane, indecent, or obscene words or language, or suggesting the commission of any lewd or lascivious act; . . .  is guilty of a gross misdemeanor[.]").

Wash. Rev. Code § 9.61.230(1).

The D.C. Circuit concluded that the federal statute, as applied to Popa, did not survive even intermediate scrutiny because the "incidental restriction" the statute placed on speech was "greater than is essential to the furtherance of an important government interest."  *Popa*, 187 F.3d at 676 (internal quotation marks omitted).  The D.C Circuit noted that "[t]he statute sweeps within its prohibitions telephone calls to public officials where the caller . . . has an intent to verbally 'abuse' a public official for voting a particular way on a public bill, 'annoy' him into changing a course of public action, or 'harass' him until he addresses problems previously left unaddressed."  *Id.* at 676–77.  The D.C. Circuit rejected the government's argument that the statute was already narrowly drawn because it contained a "stringent specific intent requirement."  *Id.* at 677.  It held that the federal statute

encompassed "public or political discourse," and the court rejected the government's position that Popa's calls had no political content, "because complaints about the actions of a government official were a significant component of his calls." *Id*.

So too in this case, complaints about the actions of a government official were a significant component of Waggy's calls, which were all made to a government office during business hours at the VA. The VA executive secretary testified that on the Count 3 and Count 4 calls, Waggy told her to "do [her] fucking job and to fucking listen," and made demands for "his property" or "his money." Based on the executive secretary's own testimony, the calls for which Waggy was convicted included complaints about the VA's actions towards him as well as his disputes with the VA over his healthcare and reimbursement issues. Despite the vulgarity and harassing nature of the calls, they, nonetheless, were complaints about the actions and inactions of the government.

The majority attempts to distinguish *Popa*, but that attempt falls far short. The majority notes that the jury made a finding that Waggy had "the intent to harass, intimidate, torment, or embarrass any other person." The majority then asserts that this finding "contradicts Defendant's assertion that he intended to persuade or complain to a public official, as was the case in . . . *Popa*." But in *Popa*, "the court instructed the jury that in order to convict Popa they had to find beyond a reasonable doubt that he 'had the intent to annoy, abuse, threaten or harass any person at the number called.'" *Popa*, 187 F.3d at 674. The juries in both cases implicitly found that the intent element of the respective statutes was met. Therefore, I do not believe that *Popa* can

be meaningfully distinguished from the circumstances of Waggy's case.

Section 9.61.230(1)(a) could have been drawn more narrowly, with little loss of utility to the state of Washington, by excluding from its scope those who intend to engage in public or political discourse. *See id.* at 677. Punishment of those who use the telephone to communicate a political message is not essential to the furtherance of the government's interest in protecting individuals from noncommunicative uses of the telephone. *See id.* Hence, the statute fails even intermediate scrutiny as applied to Waggy.[1] *Id.*

Because I find *Popa*'s reasoning to be persuasive, I would hold that § 9.61.230(1), as applied to Waggy, is unconstitutional and reverse his conviction. I respectfully dissent.

---

[1] The Washington statute differs from the federal statute at issue in *Popa* in another respect. Section 9.61.230(1) is directly aimed at speech—not conduct—in that it criminalizes "making a telephone call" "*using* [harassing] words." (Emphasis added.) This may explain why the jury found Waggy not guilty of Count 5, which collectively charged Waggy's four phone calls which went unanswered. Since no one answered, Waggy did not have the opportunity to *use* any words, harassing or otherwise. Also, as *amici* ACLU of Washington, et al., observe, Waggy's speech does not fall within any category proscribable under the First Amendment. *See* ACLU *Amici* Br. at 9–13.